```
            UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF FLORIDA
                  TAMPA DIVISION

LABLANCA SIBLEY,

        Plaintiff,

v.                            Case No. 8:24-cv-2853-VMC-AEP

CITY OF LAKELAND,
and NICHOLAS S. RIGGALL,

        Defendants.
_____/
```

## ORDER

This matter is before the Court on consideration of Defendants City of Lakeland and Nicholas S. Riggall's Motion to Dismiss Second Amended Complaint (Doc. # 49), filed on May 5, 2025. Plaintiff LaBlanca Sibley responded on May 21, 2025. (Doc. # 50). Defendants replied on June 9, 2025. (Doc. # 52). The Motion is granted in part and denied in part as set forth below.

## I.    Background

Plaintiff initiated this 42 U.S.C. § 1983 action on December 10, 2024, asserting claims arising from her arrest and detention. (Doc. # 1). Defendants moved to dismiss the complaint as a shotgun complaint and on the merits. (Doc. # 19). The Court granted the motion because the complaint was a shotgun complaint but granted leave to amend. (Doc. # 21).

1

On February 26, 2025, Plaintiff filed her amended complaint, asserting four Section 1983 claims for excessive force (Count I), false arrest (Count II), bodily integrity (Count III), and for municipal liability (Count IV). (Doc. # 23). The Court again dismissed the amended complaint as a shotgun complaint but granted Plaintiff a final opportunity to amend. (Doc. # 42). Plaintiff then filed the second amended complaint on April 21, 2025, asserting the following Section 1983 claims against the City and Officer Riggall: excessive force against Officer Riggall (Count I), false arrest against Officer Riggall (Count II), bodily integrity against Officer Riggall (Count III), and for municipal liability against the City (Count IV). (Doc. # 48).

The second amended complaint contains the following factual allegations. Plaintiff is an African-American woman currently living in the City of Lakeland, in Polk County, Florida. (Id. at 3). "On or around December 12, 2022, at approximately 12:41am, Defendant Riggall" — a police officer employed by the City of Lakeland — "arrive[d] at 'T-Bows 33 Lounge' located at 4106 Lakeland Hills Boulevard, Lakeland, Florida ('the Establishment'), in response to a reported physical alteration." (Id. at 4).

"Upon arriving at the Establishment, Defendant Riggall [was] approached by a reported victim of the physical alteration, who [told] him that an 'unknown black female' started a physical altercation and then fled the area southbound on Lakeland Hills Boulevard." (Id.). "At or about the same time, Plaintiff [was] present in the parking lot of the Establishment waiting for a Lyft driver to pick her up and take her home." (Id.). "Defendant Riggall approache[d] Plaintiff in the parking lot of the Establishment and [told] her that he [was] a law enforcement officer." (Id.). "Plaintiff inform[ed] Defendant Riggall that she [was] unaware of the alleged altercation within the Establishment and [was] not from the area (Plaintiff, at the time, was living in Arizona) and proceeded to walk past Defendant Riggall." (Id.).

"Defendant Riggall [did] not inform Plaintiff that she [was] being detained, [was] under arrest, or [was] otherwise required to speak with him." (Id.). "As Plaintiff walk[ed] past Defendant Riggall, Defendant Riggall forcefully grab[bed] Plaintiff's arm." (Id. at 5). "Surprised and scared for her safety, Plaintiff pull[ed] her arm away from Defendant Riggall." (Id.). "Defendant Riggall again grab[bed] Plaintiff's arm, forcibly bending and torquing it behind her

3

back and slamming her body against the back of a police cruiser." (Id.).

"Defendant Riggall then place[d] Plaintiff in the back of the police cruiser." (Id.). "At this point, Plaintiff was offered no explanation as to why she was forcibly detained and placed in the back of a police cruiser." (Id.). "Plaintiff plead[ed] with the officers to explain why she [was] being detained, and state[d] that she ha[d] done nothing wrong." (Id.). "While handcuffed in the back of the police cruiser, Defendant Riggall mace[d] Plaintiff in the face without justification." (Id.).

"Plaintiff [was] then transported to Polk County Jail for booking. Upon her arrival at the Polk County Jail, Defendant Riggall remove[d] Plaintiff's shirt and place[d] her into a holding room for multiple hours, while the mace remained on her face." (Id.). "Plaintiff [was] then placed into a holding cell apart from the general jail population, where she remain[ed] for approximately four days." (Id.). "Plaintiff [was] charged with Resisting Officer with Violence and Battery on a Law Enforcement Officer." (Id.). "Both charges against Plaintiff were dropped in their entirety." (Id.).

Defendants again move to dismiss, arguing that the second amended complaint fails to state a claim, and that Officer Riggall is entitled to qualified immunity. (Doc. # 49). Plaintiff has responded (Doc. # 50), and Defendants have replied. (Doc. # 52). The Motion is ripe for review.

## II.  <u>Legal Standard</u>

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). The Court must limit its

5

consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. **Analysis**

#### A. **Qualified Immunity**

First, Officer Riggall seeks dismissal of the three claims asserted against him, including raising the qualified immunity defense.

Notably, the parties do not dispute that Officer Riggall was acting pursuant to his discretionary authority when the alleged constitutional violations occurred. See Hinson v. Bias, 927 F.3d 1103, 1116 (11th Cir. 2019) ("To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. The term 'discretionary authority' covers all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." (citations and internal quotation marks omitted)).

Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities unless their conduct violates a clearly

established statutory or constitutional right. Brannon v. Finkelstein, 754 F.3d 1269, 1278 (11th Cir. 2014). "Assessing a claim of qualified immunity involves a two-step process: once a defendant raises the defense, the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010). Courts are "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." Id.

A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Johnson v. City of Miami Beach, 18 F.4th 1267, 1273 (11th Cir. 2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). "The usual way of establishing that a constitutional violation was clearly established law is by pointing to a case, in existence at the time, in which the Supreme Court or [the Eleventh Circuit] found a violation based on materially similar facts." Id. (citation omitted).

A "plaintiff can also show that a broader, clearly established principle should control the

novel facts of a particular case." <u>Waldron v. Spicher</u>, 954
F.3d 1297, 1305 (11th Cir. 2020). "[T]he principle must be
established with obvious clarity by the case law so that
every objectively reasonable government official facing the
circumstances would know that the official's conduct did
violate federal law when the official acted." <u>Id.</u> (citation
omitted). That is, "in the light of pre-existing law, the
unlawfulness must be apparent." <u>Id.</u> (citation
omitted). "Third, a plaintiff could show that the case 'fits
within the exception of conduct which so obviously violates
[the] Constitution that prior case law is unnecessary.'" <u>Id.</u>
(citation omitted). "This third test is a narrow category
encompassing those situations where 'the official's conduct
lies so very obviously at the very core of what the [relevant
constitutional provision] prohibits that the unlawfulness of
the conduct was readily apparent to the official,
notwithstanding lack of case law.'" <u>Id.</u> (citation omitted).

### 1. **False Arrest**

The Fourth Amendment provides that the government shall
not violate "[t]he right of the people to be secure . . .
against unreasonable searches and seizures." U.S. Const.
amend. IV. "[T]o state a claim under § 1983 [for false
arrest], a plaintiff must allege a warrantless arrest without

probable cause." Amato v. Cardelle, 56 F. Supp. 3d 1332, 1334 (S.D. Fla. 2014) (citing Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990)). "If an arrest is supported by probable cause, the arrestee is absolutely barred from pursuing a § 1983 false arrest claim." Id. Probable cause exists "if, at the moment the arrest was made, the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." Holmes v. Kucynda, 321 F.3d 1069, 1079 (11th Cir. 2003) (citation and internal quotation marks omitted).

"To receive qualified immunity protection, an officer need not have actual probable cause but only *arguable probable cause*." Id. (citation and internal quotation marks omitted). "Because only arguable probable cause is required, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Id. (citation and internal quotation marks omitted). "Thus, [e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is

present are entitled to immunity." Id. (citation and internal quotation marks omitted).

Officer Riggall is entitled to qualified immunity on this claim because Plaintiff has not sufficiently alleged that Officer Riggall committed a constitutional violation. Officer Riggall's interaction with Plaintiff began as an investigatory stop and then escalated to an arrest. Accepting Plaintiff's allegations as true, Officer Riggall had arguable reasonable suspicion to detain Plaintiff during an investigatory stop that Plaintiff then resisted. Once Plaintiff resisted, Officer Riggall had at least arguable probable cause to arrest Plaintiff.

The Supreme Court has "held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). "When determining whether reasonable suspicion exists, courts must review the 'totality of the circumstances' to ascertain whether the officer had some minimal level of objective justification to suspect legal wrongdoing." United States v. Graham, 496 F. App'x 961, 962 (11th Cir. 2012) (citing United States v. Hunter, 291 F.3d 1302, 1305–06 (11th Cir. 2002)).

10

"Reasonable suspicion analysis is not concerned with 'hard certainties, but with probabilities,' and an officer may rely on 'inferences and deductions that might well elude an untrained person.'" Id. (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

Officer Riggall first initiated an investigatory stop of Plaintiff because she matched the description of the woman involved in the physical altercation in the T-Bows 33 Lounge. Officer Riggall had been told that the Black woman involved in the physical altercation had exited the lounge, and Officer Riggall found Plaintiff, a Black woman, standing in the lounge's parking lot and waiting to leave the scene. (Doc. # 48 at 4); see United States v. Street, 917 F.3d 586, 596 (7th Cir. 2019) ("If the officers had arbitrarily stopped Street on the basis of his race and sex, as Street contends, this would be a very different case. It would be a mistake to read this decision as saying such a vague description of the robbers would be enough to justify a Terry stop of any African-American man the police encountered. But Street was in the right place at the right time, as far as the police were concerned. They had reason to be looking — there and then — for another African-American man, and Street was the only African-American man in the crowd leaving the store.").

11

Thus, Officer Riggall had a reasonable suspicion — or, at a minimum, an arguable reasonable suspicion — that Plaintiff had been involved in criminal activity (the physical altercation). See Jackson v. Sauls, 206 F.3d 1156, 1165-66 (11th Cir. 2000) ("A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity. When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop."); S.S. ex rel. Montgomery v. Bolton, 522 F. App'x 452, 455 (11th Cir. 2013) ("Based on the totality of the circumstances at the time of the investigatory stop, Bolton had reasonable suspicion to believe that S.S. was involved in criminal activity. S.S.'s physical description generally matched that of the robbery suspect and the tracking device contained with the money stolen from the gas station indicated that the money was nearby.").

Once Officer Riggall initiated that investigatory stop, Plaintiff stated that "she [was] unaware of the alleged altercation" and "proceeded to walk past" Officer Riggall. (Doc. # 48 at 4). Officer Riggall was not required to accept Plaintiff's assertion that she was not involved in the

12

altercation. See Graham, 496 F. App'x at 962 ("A suspect's conduct might be ambiguous and susceptible of an innocent explanation, but an officer equipped with articulable suspicion is entitled to resolve that ambiguity in favor of an investigatory stop."); Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir. 2002) ("[A] police officer need not credit everything a suspect tells him."). His attempt to discuss the altercation further with Plaintiff as part of his investigation was lawful. But, when Officer Riggall grabbed Plaintiff's arm to prevent her from leaving, Plaintiff resisted by "pull[ing] her arm away" from Officer Riggall. (Doc. # 48 at 5).

Here, accepting Plaintiff's allegations as true, an officer could have reasonably believed that there was probable cause to arrest Plaintiff based on her resistance of Officer Riggall such that at least arguable probable cause existed. See Holmes, 321 F.3d at 1079 ("Because only arguable probable cause is required, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed."). In fact, once Plaintiff resisted Officer Riggall's lawful investigatory stop, Office Riggall had

actual probable cause to arrest Plaintiff for resisting an officer. See Winters v. Ranum, 730 F. App'x 826, 829 (11th Cir. 2018) (finding that defendant officer had probable cause to arrest plaintiff "for the Florida offense of resisting an officer without violence" because "[w]hen [defendant] ordered [plaintiff] to stop, he was engaged in the lawful execution of a legal duty — he reasonably suspected that [plaintiff] had been involved in an unlawful physical fight. [Plaintiff's] attempt to evade [defendant] and push past him therefore constituted obstruction or resistance of that lawful order."); United States v. Hill, 799 F.3d 1318, 1322 (11th Cir. 2015) ("In Florida, any person who 'knowingly and willfully resists, obstructs, or opposes any officer . . . in the lawful execution of any legal duty, by offering or doing violence to the person of such officer,' is guilty of resisting an officer with violence — a third degree felony." (quoting Fla. Stat. § 843.01)).[1]

---

[1] Given that Plaintiff alleges she merely "pull[ed] her arm away" from Officer Riggall, it is debatable whether resisting an officer without violence would have been a more appropriate charge than resisting an officer with violence, with which Plaintiff was charged. Even if the Court assumes that probable cause did not exist for the charge of resisting an officer with violence, the result for this false arrest claim would be the same. "So long as the circumstances known to the officers, viewed objectively, give probable cause to arrest for any crime, the arrest is constitutional even if probable

For these reasons, Plaintiff has not pled a plausible Fourth Amendment violation and Officer Riggall is entitled to qualified immunity on this false arrest claim. The Motion is granted as to Count II.

### 2. **Excessive Force**

Officer Riggall also asserts he is entitled to qualified immunity on the excessive force claim. (Doc. # 49 at 10-12).

Again, the Fourth Amendment provides that the government shall not violate "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "This includes the right to be free from the use of excessive force during an 'arrest, investigatory stop, or other "seizure[.]"'" Ratlieff v. City of Fort Lauderdale, 748 F. Supp. 3d 1202, 1237 (S.D. Fla. 2024) (quoting Corbitt v. Vickers, 929 F.3d 1304, 1313 (11th Cir. 2019)). Thus, a Fourth

_____

cause was lacking as to the announced charges." United States v. Nicholl, No. 22-12043, 2023 WL 1956753, at *3 (11th Cir. Feb. 13, 2023). "[T]he only question relevant to the objective reasonableness of a seizure is whether probable cause for *some* crime exists." Williams v. Aguirre, 965 F.3d 1147, 1162 (11th Cir. 2020). And probable cause existed for the Florida crime of resisting an officer without violence. See Winters, 730 F. App'x at 829 ("To be guilty of resisting an officer without violence, (1) the officer must be engaged in the lawful execution of a legal duty; and (2) the defendant's action must constitute obstruction or resistance of that lawful duty." (quoting P.B. v. State, 899 So.2d 480, 481 (Fla. 3d DCA 2005)).

Amendment excessive force claim under § 1983 requires "(1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." Troupe v. Sarasota Cnty., 419 F.3d 1160, 1166 (11th Cir. 2005).

Certain acts of force by Officer Riggall do not support an excessive force claim. "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003). For this reason, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). That is, "a minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case." Id. at 1258. The Eleventh Circuit has "stated that de minimis force, even when it is 'unnecessary,' is 'not unlawful.'" Taylor v. Taylor, 649 F. App'x 737, 746 (11th Cir. 2016).

Here, Officer Riggall "forcefully grab[bed] Plaintiff's arm" while Plaintiff walked away from him, again grabbed Plaintiff's arm after she had pulled her arm away, "forcibly ben[t] and torqu[ed] it behind her back and slam[med] her body against the back of a police cruiser," and "plac[ed]

16

Plaintiff in the back of the police cruiser." (Doc. # 48 4-5). These uses of force qualify as de minimis. See Nolin, 207 F.3d at 1255 (finding use of force was de minimis where the officer "grabbed [plaintiff] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him"); Taylor, 649 F. App'x at 746 (finding use of force de minimis where, "during the course of a permissible arrest, [the officer] grabbed [plaintiff] without warning, slammed her against a patrol car several feet away, causing her head to hit the car first, and then handcuffed her" with the result that plaintiff "suffered a spiral fracture in her hand and bruising to her hand, forearm, right upper eyelid, and chest"). Importantly, Plaintiff admits to walking past Officer Riggall while he was trying to speak to her and, once he grabbed her arm to stop her, she pulled her arm away from him, which is a form of resistance. See Graham v. Connor, 490 U.S. 386, 396 (1989) (recognizing "whether [an arrestee] is actively resisting arrest or attempting to evade arrest by flight" as a factor to be considered in assessing the reasonableness of the use of force). Thus, Plaintiff has not plausibly alleged that the previously described use of force

was excessive under the Fourth Amendment. Furthermore, Plaintiff failed to identify in her response a case that clearly established that Officer Riggall's actions described above violated the Fourth Amendment. At most, Plaintiff cited Eleventh Circuit cases that listed the multiple factors considered in assessing reasonableness of force. (Doc. # 50 at 8-10). Officer Riggall is accordingly entitled to qualified immunity as to these discrete acts.

The only clearly established law Plaintiff cites in her response relates to the final use of force alleged against Officer Riggall: his "mac[ing] Plaintiff in the face without justification" while she was "handcuffed in the back of the police cruiser." (Doc. # 48 at 5). Plaintiff identifies Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002), as clearly establishing that pepper spraying an arrestee "secured with handcuffs [] in the back seat of the patrol car" and not engaging in threatening conduct is excessive force. (Doc. # 50 at 10-11).

The Court agrees with Plaintiff. Officer Riggall is not entitled to qualified immunity at the motion to dismiss stage regarding the use of mace. "Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee

surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." Vinyard, 311 F.3d at 1348. Accepting her allegations as true, Officer Riggall maced a handcuffed and non-resisting Plaintiff while she was safely detained in the back of a police cruiser. Such conduct is a violation of Plaintiff's clearly established right to be free from excessive force. See Id. at 1355 ("[N]o objectively reasonable police officer could believe that, after Vinyard was under arrest, handcuffed behind her back, secured in the back seat of a patrol car with a protective screen between the officer and the arrestee, an officer could stop the car, grab such arrestee by her hair and arm, bruise her and apply pepper spray to try to stop the intoxicated arrestee from screaming and returning the officer's exchange of obscenities and insults during a short four-mile jail ride."); Hall v. Alabama Dep't of Pub. Safety, 249 F. App'x 749, 751 (11th Cir. 2007) ("Plaintiff's allegation that Defendant sprayed him with mace *after* Plaintiff had already been subdued and handcuffed is sufficient to survive Defendant's motion to dismiss."). Officer Riggall may raise his qualified immunity defense again at the summary judgment stage when the parties have had the benefit of discovery.

The Motion is denied as to Count I. As explained above, this claim may only proceed as to the alleged macing of Plaintiff in the police cruiser. Officer Riggall is entitled to qualified immunity as to all other alleged uses of force.

### 3. **Bodily Integrity**

Officer Riggall is entitled to qualified immunity on Count III, the violation of bodily integrity claim, for multiple reasons. In this claim, Plaintiff alleges her rights under the Eighth and Fourteenth Amendments were violated. (Doc. # 48 at 10-11). As an initial matter, Plaintiff's citation to the Eighth Amendment is unavailing. "Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007). Thus, this claim only concerns the Fourteenth Amendment.

Count III lists the same allegedly unlawful actions of Officer Riggall that she listed for both the Fourth Amendment false arrest and excessive force claims. (Doc. # 48 at 11). Thus, this claim includes things that happened to Plaintiff during her interaction with Officer Riggall outside the lounge and things that happened to her in the Polk County Jail, such as the removal of Plaintiff's shirt at the jail,

her placement in "a holding room for multiple hours while mace remained on her face," and placing her in "a holding cell apart from the general jail population." (Id.).

Plaintiff does not raise any argument in defense of this claim in her response to the Motion. Indeed, she only argues that Officer Riggall is not entitled to qualified immunity as to the false arrest and excessive force claims, which involve violations of the Fourth Amendment during her arrest. See (Doc. # 50 at 4–12) (arguing only that Officer Riggall is not entitled to qualified immunity as to the false arrest and excessive force claims). This alone warrants the grant of qualified immunity. It is Plaintiff's burden to point to clearly established law supporting this claim and Plaintiff has chosen not to do so. See Walker v. City of Orem, 451 F.3d 1139, 1151 (10th Cir. 2006) ("Plaintiffs had the burden, in response to defendants' motion to dismiss, of articulating such clearly-established law."); Villagrana v. Vill. of Oswego, No. 04 C 4603, 2005 WL 217033, at *4 (N.D. Ill. Jan. 28, 2005) ("Villagrana cites no 'closely correspond[ing]' case law suggesting that Johnson's actions violated his clearly established rights to familial privacy; indeed, he cites no case law at all. Though it is unnecessary for the plaintiff to specifically cite the legal basis for his claim

in his pleading so as long as the facts alleged would support relief, when a plaintiff responds to a motion to dismiss that raises a qualified immunity defense, the plaintiff bears the burden of proving the existence of a clearly established right. Villagrana has failed to do so. Thus, his family privacy claim is dismissed." (citations omitted)). Thus, the Motion is granted as to Count III.

Regardless, this claim must be dismissed as to the allegations of false arrest and excessive force by Officer Riggall. To the extent this claim is based on Officer Riggall's arrest of Plaintiff and use of force during Plaintiff's arrest (including macing her in the back of the patrol vehicle), this claim is duplicative of the false arrest and excessive force claims under the Fourth Amendment. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)). Because Plaintiff's allegations of false arrest and excessive force during her arrest are covered by the Fourth Amendment, she may not assert a bodily integrity

substantive due process claim under the Fourteenth Amendment based on these same acts.

Furthermore, this claim also fails to the extent it is based on the allegedly unlawful conditions of confinement at the Polk County Jail. The Court agrees with Officer Riggall that Plaintiff has not plausibly alleged a constitutional violation at all, let alone one committed by Officer Riggall. (Doc. # 49 at 10 n.3). As to Officer Riggall's conduct, Plaintiff at most complains that "[u]pon her arrival at the Polk County Jail, Defendant Riggall remove[d] Plaintiff's shirt and place[d] her into a holding room for multiple hours, while the mace remained on her face." (Doc. # 48 at 5). While Plaintiff remained in "a holding cell apart from the general jail population" for four days, Plaintiff does not allege that Officer Riggall made that decision or kept her in that cell. (Id.).

Plaintiff has not plausibly alleged that *Officer Riggall* was involved with her treatment at the County Jail. As Plaintiff alleges (Doc. # 48 at 3), Officer Riggall works for the Lakeland Police Department — not the County, which runs the jail. Officer Riggall is correct that "Plaintiff does not include allegations that would give the Court any reason to accept her unusual position that an officer of the Lakeland

23

Police Department had any control or liability for anything that happened at the jail, including the book-in [process], her placement in the holding room, or being held in the 'holding cell apart from the general jail population.'" (Doc. # 49 at 10 n.3). Thus, Plaintiff has not plausibly alleged that Officer Riggall violated her Fourteenth Amendment rights through her treatment at the Polk County Jail.

Even accepting as true Plaintiff's implausible allegation that Officer Riggall — rather than employees of the Polk County Jail — removed her shirt at the jail and placed her in a holding cell without washing the mace from Plaintiff's face, Plaintiff has failed to cite any clearly established law that these acts constitute a Fourteenth Amendment violation. "[A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979). The government, however, "may detain [a person] to ensure [her] presence at trial and may subject [her] to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment." Id. at 536-37. The placement of Plaintiff into a cell to detain her does not plausibly qualify as punishment. And Plaintiff does not allege that Officer Riggall removed her shirt, which

was apparently covered in mace, for a sexual or demeaning purpose. See Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993) (recognizing "a prisoner's constitutional right to bodily privacy because most people have 'a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating'"). Nor does Plaintiff allege that she notified Officer Riggall at the jail that she was suffering from residual mace on her face before he allegedly placed her in the holding cell. See Scroggins v. Davis, 346 F. App'x 504, 506 (11th Cir. 2009) (affirming grant of summary judgment for jail defendants on excessive force claim because the defendants had no knowledge that the plaintiff was suffering any continuing discomfort from pepper spray such that the Court could not infer the defendants did not clean the residual pepper spray from plaintiff's face for a "sadistic or malicious purpose").

Thus, this alleged conduct at the jail by Officer Riggall does not establish a plausible Fourteenth Amendment violation. And Plaintiff has not identified a case that would have given Officer Riggall fair notice that his alleged removal of Plaintiff's shirt before placing her in a holding

cell by herself was a constitutional violation. Without more, Officer Riggall is entitled to qualified immunity.

For all these reasons, the Motion is granted on Count III.

### B. **Monell Claim**

Next, the City seeks dismissal of the claim against it. (Doc. # 49 at 13-19). It is well-established that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997). Rather, to recover damages from the City under § 1983, Plaintiff must plausibly allege: "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

Here, Plaintiff has only plausibly alleged one constitutional violation: the use of excessive force by Officer Riggall. Thus, the Court need only address the Monell claim to the extent it is based on excessive force. See Id. (stating that the first element of a Monell claim is that the

plaintiff's constitutional right was violated). And, indeed, Plaintiff's allegations regarding <u>Monell</u> liability focus on excessive force. <u>See</u> (Doc. # 48 at 13) ("This pattern and practice with respect to the use of excessive force, and its disproportional use against Black citizens, results in an unwritten policy or custom within the Lakeland Police Department of applying disproportionate force in officer interactions with Black citizens.").

A plaintiff seeking to impose liability on a municipality under Section 1983 must identify a particular municipal "policy" or "custom" that caused the constitutional injury. <u>Bd. of Cty. Comm'rs of Bryan Cty.</u>, 520 U.S. at 403.

> A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law.

<u>Wayne v. Jarvis</u>, 197 F.3d 1098, 1105 (11th Cir. 1999) (quoting <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997)). Plaintiff must show that the City's policy or custom was the "moving force" that caused the constitutional violation to establish the City's liability. <u>McElligott v. Foley</u>, 182 F.3d 1248, 1259 (11th Cir. 1999); <u>Young v. City of Augusta</u>, 59 F.3d 1160, 1171 (11th Cir. 1995).

27

Accepting Plaintiff's allegations as true, the "City is aware that its officers engage in violent behavior that involves excessive force in violation of the Fourth Amendment, which disproportionately involves African Americans, like Plaintiff." (Doc. # 48 at 13). "Among Florida police departments, Lakeland has statistically used more force per arrest than 95% of departments statewide." (Id.). "Additionally, Lakeland Police Department has a larger racial disparity in its use of deadly force than 80% of departments statewide." (Id.). "[O]ver 54.5% of all protective action incidents carried out by the Lakeland Police Department were carried out against Black citizens," even though "roughly 19.9% of the City's residents are Black." (Id.). "This pattern and practice with respect to the use of excessive force, and its disproportional use against Black citizens, results in an unwritten policy or custom within the Lakeland Police Department of applying disproportionate force in officer interactions with Black citizens." (Id.). "The aforesaid unwritten policy or custom put Plaintiff at unreasonable risk of grievous bodily harm, injury, or death" and "did in fact cause Plaintiff's injuries." (Id. at 14).

These allegations do not sufficiently plead a plausible custom or policy of excessive force by the City. No prior

incidents of excessive force of any kind are alleged. No prior incidents of an officer macing an unresisting suspect or arrestee — the only type of excessive force still at issue here — are alleged. Plaintiff merely includes statistics about the number of use-of-force incidents for the Lakeland Police Department as compared to other Florida law enforcement agencies and the disproportionate number of use-of-force incidents involving Black citizens. But these statistics do not purport to show the number of *excessive* force incidents in the City. No information is given about whether the use of force was unjustified in any of the cases reflected in the statistics. The Court cannot reasonably infer that any of the uses of force noted in the statistics involved excessive force. Indeed, courts have found statistics more compelling than those pled by Plaintiff to be insufficient to plausibly allege a custom of excessive force. See Liss v. City of Jacksonville, No. 3:19-cv-185-TJC-JBT, 2020 WL 4734932, at *3 (M.D. Fla. Aug. 14, 2020) ("In his Amended Complaint, Liss added allegations of a statistical analysis of excessive force complaints in Jacksonville compared to a nationwide survey, and a list of fourteen alleged instances of excessive force by Jacksonville Sheriff's Office deputies. . . . These allegations are still

insufficient to state a municipal policy or custom of excessive force at the pretrial detention facility. First, the statistic provided by Liss — that only 9 out of 594 'force complaints lodged against the current patrol officers' were sustained — does not demonstrate a custom of excessive force at the pretrial detention facility. It is unclear when these 594 complaints occurred. Additionally, that only nine of the force complaints were sustained — a rate Liss alleges is much lower than the national average — does not show a custom of excessive force, and perhaps shows the opposite."). The Court dismisses this claim to the extent it is based on a custom or policy of excessive force.

The Court next addresses Plaintiff's failure to train theory of Monell liability. An inadequate training program can be the basis for Section 1983 liability in limited circumstances where the municipality adhered to an approach that failed to prevent tortious conduct by employees. Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 407 (citing City of Canton, 489 U.S. at 387–390). "A pattern of tortious conduct by employees can show that the lack of proper training constituted the 'moving force' behind the plaintiff's alleged injury." Miller v. City of Tampa, No. 8:10-cv-487-VMC-EAJ, 2011 WL 2631974, at *2 (M.D. Fla. July 5, 2011) (citing Bd.

of Cty. Comm'rs of Bryan Cty., 520 U.S. at 407–408; Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288 (11th Cir. 2009)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (citation omitted). The Supreme Court, however, "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference," such as a police department giving firearms to officers "without training the officers in the constitutional limitation on the use of deadly force." Id. at 63 (citation omitted).

According to the second amended complaint, the City's "training, decision-making, and policymaking with respect to using force is so inadequate that it shows the Lakeland Police Department's deliberate indifference to the constitutional rights of citizens." (Doc. # 48 at 14). "The City's failure to adequately train its officers, including Defendant Riggall, concerning the appropriate use of force and to discipline them for their prior instances of excessive force directly and proximately caused the violation of Plaintiff's

31

Fourth, Eighth, and Fourteenth Amendment rights." (<u>Id.</u> at 15).

Plaintiff has not sufficiently pled that the City's failure to properly train its police officers on the use of force caused Plaintiff's injury. Plaintiff does not plead any details about the City's training program on excessive force, or specifically on the use of mace by officers. <u>See</u> <u>Harapeti v. City of Miami Beach</u>, No. 1:23-cv-24018, 2024 WL 5442845, at *3 (S.D. Fla. Nov. 22, 2024) ("Plaintiff alleges only in conclusory fashion that the City's failure to train its officers about the consensual nature of a trespass encounter is 'deliberately indifferent.' Conclusory allegations are not sufficient to withstand a motion to dismiss a claim of municipal liability."). Despite her claim to the contrary (Doc. # 50 at 16), Plaintiff has not identified in the operative complaint any prior incidents of excessive force of any kind by Lakeland police officers. Nor has she alleged any prior incidents of Lakeland police officers using mace on unresisting detainees, the only plausible excessive force allegation in this case. <u>See</u> <u>Connick</u>, 563 U.S. 51, 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause

violations of constitutional rights."); <u>Davis v. City of Montgomery</u>, 220 F. Supp. 3d 1275, 1284–85 (M.D. Ala. 2016) ("Davis has not alleged any facts showing a history of constitutional violations against persons with hearing and speech disabilities such that the need for training would have been so obvious to the City that a failure to train amounted to deliberate indifference towards the constitutional rights of such persons. Although Davis has alleged that Montgomery police officers often encounter individuals with similar hearing and speech disabilities as Davis, Davis has not alleged how often, if at all, those encounters resulted in constitutional violations.").

Again, the generalized statistics on the use of force by the Lakeland Police Department are insufficient to support a failure to train theory even at the motion to dismiss stage for the same reason they were insufficient to establish a custom of excessive force. The Court is mindful that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." <u>Connick</u>, 563 U.S. 51, 61. In short, Plaintiff has not plausibly alleged that the City's training on the use of force — let alone on the specific use of mace — was insufficient.

The Motion is granted and Count IV is dismissed.

33

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants City of Lakeland and Nicholas S. Riggall's
Motion to Dismiss Second Amended Complaint (Doc. # 49)
is **GRANTED** in part and **DENIED** in part.

(2)   Qualified immunity is granted to Officer Riggall on the
false arrest and bodily integrity claims (Counts II and
III). The Monell claim (Count IV) is dismissed. But the
excessive force claim (Count I) survives to the extent
explained in this Order.

(3)   Defendant Riggall is directed to file his answer to the
remaining claim within 14 days of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this
23rd day of June, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

34