```
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
```

LABLANCA SIBLEY,

    Plaintiff,

v.                                Case No. 8:24-cv-2853-VMC-AEP

CITY OF LAKELAND
and NICHOLAS S. RIGGALL,

    Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Nicholas S. Riggall's Motion to Exclude Testimony of Plaintiff's Designated Expert Witness (Doc. # 64), filed on December 15, 2025. Plaintiff LaBlanca Sibley responded on January 20, 2026. (Doc. # 71). The Motion is granted in part and denied in part.

**I.   Background**

Ms. Sibley initiated this 42 U.S.C. § 1983 action on December 10, 2024, asserting claims arising from her arrest and detention. (Doc. # 1). The Court ultimately dismissed most claims from the second amended complaint. (Doc. # 53). The only claim that survived the pleading stage was Ms. Sibley's excessive force claim against Officer Riggall to the extent that claim is based on Officer Riggall's use of pepper

1

spray on Ms. Sibley while she was in the patrol car. (Id. at 18-20).

The case then proceeded through discovery. Ms. Sibley hired an expert on law enforcement practices and the use of force, Mr. Jeronimo Rodriguez. (Doc. # 64-1 at Report). Mr. Rodriguez served as a police officer with the Los Angeles Police Department for over 25 years, including work in the Force Investigation Division. (Id. at Report at 2-3). Subsequently, Mr. Rodriguez "oversaw and managed the Baltimore Police Department's Professional Standards and Accountability Bureau," which involved "investigat[ing], review[ing], approv[ing], and provid[ing] adjudication recommendations to the police commissioner on the handling of all personnel complaints (criminal and administrative), lethal uses of force, in-custody death investigations, major police pursuits, accidents involving police officers, and other administrative investigations." (Id. at Report at 4).

"Since retiring as an active law enforcement officer in 2021, [Mr. Rodriguez has] reviewed and consulted on police and law enforcement practices as a private police consultant" and "audited agencies across the country and continue[s] to train many agencies throughout the United States on police-related investigations." (Id. at Report at 1). The trainings

2

he delivers involve various policy and procedures subjects, including the use of force and internal affairs investigations. (Id.).

As relevant to the remaining issue in the case, Mr. Rodriguez opines that Ms. Sibley "did not pose any threat to the officers, nor was anyone at risk of being harmed by her actions" because she was handcuffed in the patrol car and was merely "tapping" the window with her feet to get Officer Riggall's attention. (Id. at Report at 13). According to him, Ms. Sibley's "actions did not rise to the level that, according to [the Lakeland Police Department's] policy and generally accepted practices, would have permitted Officer Riggall to use OC Spray [pepper spray] on [Ms. Sibley], while she was handcuffed and secured in the back seat of the police car. It is [Mr. Rodriguez's] opinion that Officer Riggall's use of the OC Spray (aerosol deterrent) violated [the Lakeland Police Department's] policy and was not in keeping with generally accepted practices." (Id.). He also concludes that "a reasonably trained officer in the same situation would not have deployed OC Spray on a handcuffed person secured in the back of a police car to get them to stop a non-violent and non-assaultive behavior." (Id.).

3

Now, Officer Riggall moves to exclude the opinions and testimony of Mr. Rodriguez. (Doc. # 64). Ms. Sibley has responded (Doc. # 71), and the Motion is ripe for review.

## II. Legal Standard

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'"

Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

### III. Analysis

Officer Riggall challenges Mr. Rodriguez's qualifications, methodology, and helpfulness to the trier of fact. (Doc. # 64). The Court addresses each in turn.

### A. Opinions Unrelated to Pepper Spray in Patrol Car

As an initial matter, the Court notes that Mr. Rodriguez's report includes opinions on matters no longer at issue in this case, including whether probable cause existed to arrest Ms. Sibley, whether excessive force was used before Ms. Sibley was placed in the patrol car, and the treatment of Ms. Sibley while she was in jail. (Doc. # 64-1 at Report at 10-11). Officer Riggall argues that these opinions should be excluded "as inapplicable to the single remaining issue,

5

which is whether the use of pepper spray on [Ms. Sibley] while in the backseat of the police car was constitutional." (Doc. # 64 at 4).

The Court agrees. The only claim remaining in this case is the excessive force claim based on the use of pepper spray on Ms. Sibley while she was in the patrol car. Thus, Mr. Rodriguez's opinions about issues separate from the use of force, including whether Officer Riggall had probable cause to arrest Ms. Sibley, are excluded as irrelevant and unhelpful to the jury. The Motion is granted as to these irrelevant opinions.

**B.   Qualifications**

The first question under Daubert is whether an expert is qualified to testify about the matters he or she intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citation omitted).

6

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

Officer Riggall does not address Mr. Rodriguez's qualifications in depth. Rather, in the conclusion of his Motion, Officer Riggall states vaguely that Ms. Sibley "will not be able to show by a preponderance of the evidence that [Mr.] Rodriguez is qualified to testify as an expert in this case." (Doc. # 64 at 8). He also points out that Mr. Rodriguez has not "studied, personally conducted research, or authored any literature on the use of force at issue in this case." (Id.). The Court disagrees.

First, Officer Riggall's argument on qualifications, made conclusorily and without citations to any authority, is insufficiently developed for the Court to consider. See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("[T]he [defendant] has simply failed to

7

support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.").

Regardless, Mr. Rodriguez is qualified to testify as a police practices expert generally and about the use of force specifically. Mr. Rodriguez has served as a law enforcement officer for decades. See Feliciano v. City of Miami Beach, 844 F. Supp. 2d 1258, 1263 (S.D. Fla. 2012) (holding that an expert was "certainly qualified to render his opinions concerning police practices" where the expert had "served in an active law enforcement capacity for over a quarter century"); Washington v. City of Waldo, Fla., No. 1:15-cv-73-MW/GRJ, 2016 WL 3545909, at *2 (N.D. Fla. Mar. 1, 2016) ("Dr. Thomas's education and experience in police practices matters goes well beyond that of a layman. Accordingly, this Court finds that Dr. Thomas is qualified to render expert opinions on Plaintiff's claims of false arrest, battery, excessive force, and negligent hiring and retention."). For some of those years, he conducted investigations into officers' uses of force. (Doc. # 64-1 at Report at 4). Since his retirement from law enforcement, Mr. Rodriguez has worked as a police practices expert in other cases and has consulted

and provided trainings on various police practices subjects. (Id. at Report at 1).

In short, Mr. Rodriguez satisfies the minimum qualification requirement to testify as a police practices expert.

**C.   Reliability**

The second question is whether Mr. Rodriguez's methodology is reliable. "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other

relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience," to establish reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

Officer Riggall argues that Mr. Rodriguez's opinions "are not based on sufficient or accurate data" because, among other things, Mr. Rodriguez supposedly "draws his opinion on the force being excessive largely upon his belief that [Ms. Sibley] was falsely arrested and had not been resisting or involved in any crime." (Doc. # 64 at 4). Officer Riggall also faults Mr. Rodriguez's opinions that "force may not be used on an individual to prevent destruction of property or to prevent that person from harming themselves" and that Ms. Sibley's "behavior was 'nonviolent and non-aggressive' and thus did not warrant force." (Id. at 6). According to Officer

Riggall, it is inappropriate for Mr. Rodriguez to "look[] at the situation in light of [Ms. Sibley's] allegations and testimony" and "Mr. Rodriguez offers no methodology for applying a reasonable officers' view of the totality of the circumstances." (Id. at 6-7).

The Court finds Mr. Rodriguez's methodology sufficiently reliable. Mr. Rodriguez describes his methodology thusly: his "method for forming opinions relies on nearly forty years of experience as a police officer and trainer, collaboration with various instructors and police practices experts, and a comprehensive review of relevant evidence and materials, without making credibility judgments." (Doc. # 64-1 at Report at 6). He "also compare[s] the actions taken by involved officers with generally accepted practices and their policies at the appropriate times." (Id.). His report lists the documents and evidence Mr. Rodriguez reviewed in reaching his opinions, including the video of the incident, the Lakeland Police Department's policies, and other discovery. (Id. at Report at 8).

Such application of experience, knowledge, and training in police procedures to evaluate the evidence in this case is a reliable methodology. See Kates v. Nocco, No. 8:22-cv-342-VMC-TGW, 2023 WL 3452678, at *5 (M.D. Fla. May 15, 2023)

11

(finding police practices expert reliable where his "methodology involve[d] the review of relevant factual material in this case, consideration of outside materials including model policies, national standards, and peer-reviewed literature about police practices and procedures, as well as his lengthy experience as a law enforcement officer and teacher of police and investigative practices"); Washington, 2016 WL 3545909, at *3 (finding police practices expert's methodology reliable where the expert "used his law enforcement experience, knowledge, and training in police practices, including his review of court cases, and evaluated the facts of the instant case to form his opinions"); Bussey-Morice v. Kennedy, No. 6:11-cv-970-CEH-GJ, 2012 WL 7992419, at *3 (M.D. Fla. Dec. 28, 2012) ("As demonstrated in Lynch's affidavit, he uses his experience in police practices and procedure, including select court cases, and evaluates the facts in this case to form his opinions. There is nothing inherently unreliable about this methodology." (citation omitted)).

To the extent Mr. Rodriguez allegedly relies on Ms. Sibley's version of events, such reliance does not merit exclusion of Mr. Rodriguez's opinions. "An expert is . . . permitted to base his opinion on a particular version of

12

disputed facts and the weight to be accorded to that opinion is for the jury." Walker v. Gordon, 46 F. App'x 691, 695–96 (3d Cir. 2002).

The alleged flaws in Mr. Rodriguez's methodology should be addressed during cross-examination. See Maiz, 253 F.3d at 666 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)). Thus, the Motion is denied as to reliability.

### D. Assistance to the Trier of Fact

Expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison, 184 F.3d at 1312 (citation omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in

closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted).

Officer Riggall argues that Mr. Rodriguez's opinions will not be helpful to the jury because "Mr. Rodriguez never explains, beyond his own characterization of Plaintiff's behavior as 'tapping merely to get an officer's attention to plead her innocence,' the basis for not permitting a reasonable officer to interpret Plaintiff's behavior as violent or aggressive." (Doc. # 64 at 8). According to Officer Riggall, "Mr. Rodrigues merely relies on his experience as a police officer and offers alternative methods of what techniques Officer Riggall could have used . . . , which does not meet the third prong of 'assisting the trier of fact' because no 'scientific, technical, or other specialized knowledge' is required for such summarizing." (Id. at 8). He also argues that "Mr. Rodriguez offers legal opinions in the guise of interpreting the [Lakeland Police Department's] policy on use of force." (Id. at 7).

The Court rejects this argument in part. Mr. Rodriguez's opinions on the use of force and police practices will be helpful to the jury. "Here, a lay juror would not know [the Lakeland Police Department's] practices and procedures regarding the use of force and whether [Officer Riggall's]

14

actions were consistent with those practices and procedures." Rivera v. Ring, 810 F. App'x 859, 863–64 (11th Cir. 2020). Likewise, Mr. Rodriguez's opinion on whether Officer Riggall behaved in accordance with police procedures will be helpful to the jury. See Kates, 2023 WL 3452678, at *5 (finding expert's opinion "on whether the officers here behaved in accordance with proper police procedures" helpful to the jury); Feliciano, 844 F. Supp. 2d at 1265 (finding that a police practices expert's "opinion on the use of force in the instant case would assist a jury in understanding or determining a fact at issue"). Officer Riggall may address the alleged flaws in Mr. Rodriguez's opinions on cross-examination.

However, Officer Riggall is correct that "[n]o witness may offer legal conclusions or testify to the legal implications of conduct." Dudash v. S.-Owners Ins. Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *2 (M.D. Fla. May 12, 2017); see also Washington, 2016 WL 3545909, at *3 ("[A] witness typically may not 'give purely legal conclusions,' such as that an officer lacked probable cause to arrest, or that a search conducted without a warrant violated the Fourth Amendment, as such conclusory testimony would 'tell the jury what result to reach' on ultimate issues only the jury should

resolve." (citations omitted)). But, the Eleventh Circuit has acknowledged that "the distinction between whether challenged testimony is either an admissible factual opinion or an inadmissible legal conclusion is not always easy to perceive." Hanson v. Waller, 888 F.2d 806, 811 (11th Cir. 1989).

Here, most of Mr. Rodriguez's opinions and report do not include legal conclusions. Mr. Rodriguez, however, does opine that the use of pepper spray was "excessive." (Doc. # 64-1 at Report at 13). Calling the use of force "excessive" is a legal conclusion, given the jury is tasked with deciding whether the use of force was "excessive" and, therefore, unconstitutional. The Court will not allow Mr. Rodriguez to opine that the use of force was "excessive." See Kates, 2023 WL 3452678, at *6 (excluding police practices expert's opinions "that certain conduct was constitutional or otherwise lawful" as impermissible legal conclusions). He may still opine that the use of force was unnecessary or in violation of police practices and policies, as such opinions are not legal conclusions.

Accordingly, it is hereby

**ORDERED, ADJUDGED**, and **DECREED:**

(1) Defendant Nicholas S. Riggall's Motion to Exclude Testimony of Plaintiff's Designated Expert Witness (Doc. # 64) is **GRANTED** in part and **DENIED** in part.

(2) Mr. Rodriguez may not offer opinions on topics no longer at issue in this case, including the lawfulness of Ms. Sibley's arrest. Additionally, Mr. Rodriguez may not offer legal opinions during his testimony.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of January, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE