UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LABLANCA SIBLEY,

      Plaintiff,

v.                      Case No. 8:24-cv-2853-VMC-AEP

CITY OF LAKELAND,
and NICHOLAS S. RIGGALL,

      Defendants.
_____/

**ORDER**

    This matter is before the Court on consideration of
Defendant Nicholas S. Riggall's Motion for Summary Judgment
(Doc. # 63), filed on December 15, 2025. Plaintiff LaBlanca
Sibley responded on January 20, 2026. (Doc. # 70). Officer
Riggall replied on February 3, 2026. (Doc. # 73). The Motion
is denied.

**I.   Background**

    Ms. Sibley initiated this 42 U.S.C. § 1983 action on
December 10, 2024, asserting claims arising from her arrest
and detention. (Doc. # 1). The Court ultimately dismissed
most claims from the second amended complaint. (Doc. # 53).
Specifically, the Court dismissed the sole claim against the
City of Lakeland and found that Officer Riggall was entitled
to qualified immunity on the false arrest and bodily integrity

1

claims. (Id.). The only claim that survived the pleading stage was Ms. Sibley's excessive force claim against Officer Riggall to the extent that claim is based on Officer Riggall's use of pepper spray on Ms. Sibley while she was in the patrol car. (Id. at 18-20). Thereafter, the case proceeded through discovery, which revealed the following facts.

In the early morning hours of December 12, 2022, Officer Riggall of the Lakeland Police Department was dispatched to "T-Bows 33 Lounge" in Lakeland, Florida, in response to a reported altercation that had occurred inside. (Riggall Depo. at 26:10-15). Ms. Sibley was in the parking lot and Officer Riggall attempted to stop her for an investigatory stop. (Id. at 29:13-31:18). Ms. Sibley resisted by pulling her arm away from Officer Riggall's grip, leading Officer Riggall to place Ms. Sibley under arrest for resisting an officer with violence and battery on a law enforcement officer. (Id. at 32:3-25).

Ms. Sibley was handcuffed during the arrest and placed into a patrol car. (Pl. Depo. 15:1-12). According to Officer Riggall, Ms. Sibley was trying to kick him as he placed her into the patrol car. (Riggall Depo. at 33:23-34:17). Ms. Sibley denies that she attempted to kick Officer Riggall, and the video from inside the patrol car does not clearly show her attempting to kick him. (Video at 7:58-8:41). It is

2

undisputed, however, that another officer had to go to the other side of the vehicle to "basically crawl into the cage and grab [Ms. Sibley's] arm and drag her into the back of the car." (Riggall Depo. at 33:23-34:17; Video at 7:58-8:41). Ms. Sibley was yelling continuously while she was in the backseat of the patrol car. (Pl. Depo. at 15:11-16:14; Video at 8:41-9:30).

It is undisputed that Ms. Sibley began kicking the door and window of the patrol car multiple times, although the degree of force she used is unclear in the video. (Video at 8:41-9:30). Officer Riggall maintains that Ms. Sibley was forcefully kicking the door and window. (Riggall Decl. at ¶¶ 5-6; Riggall Depo. at 36:16-23). Officer Riggall testified that he heard banging coming from the patrol car in addition to Ms. Sibley screaming and could see the car shaking back and forth. (Riggall Depo. at 38:10-21). According to his deposition testimony, Officer Riggall knew it was hard to make a "3,000-pound car shake back and forth" and his "immediate concern" was that Ms. Sibley was "flailing or hitting her head or trying to injure herself." (Id. at 38:22-39:4). Officer Riggall testified that he observed her "full-force kicking the door," which "wasn't tapping." (Id. at 41:14-18). But Officer Riggall also testified that he had no

fear for his safety or concern that Ms. Sibley would escape as a result of her actions in the patrol car. (Id. at 39:17-19, 40:17-24).

During her deposition, Ms. Sibley agreed with the characterization of her actions as "kicking the car" and "kicking the window." (Pl. Depo. at 16:11-17). But she disputes that the video shows forceful kicking rather than nonviolent kicking akin to "tapping." Her police practices expert, Mr. Jeronimo Rodriguez, interpreted the video as depicting Ms. Sibley merely "tapping" the patrol car's window area in "an attempt to gain attention." (Rodriguez Report at 10-14; Rodriguez Depo. at 39:1-20). He testified that the lack of damage to the window or door suggests Ms. Sibley was not using much force when she placed her feet there. (Rodriguez Depo. at 39:1-20, 65:19-66:11). Based on his experience as a law enforcement officer, Mr. Rodriguez opined that "people handcuffed and seated in the back seat of a police car will often use their feet to tap on the window to get the officer's attention." (Rodriguez Report at 12). Upon reviewing the video, Mr. Rodriguez "saw no indication that [Ms. Sibley] was violent or assaultive as she tried to get the officer's attention" and "saw no sign that [she] was trying to break the window to escape." (Id.).

4

Officer Riggall told Ms. Sibley to stop kicking the window, (Pl. Depo. at 16:15-17), and if she did not stop, he was going to pepper spray her. (Riggall Depo. at 39:5-16; Video at 9:24-9:35). Ms. Sibley continued kicking the window with her feet, and Officer Riggall pepper sprayed her. (Riggall Depo. at 40:25-41:10; Video at 9:31-10:01).

Ms. Sibley was only pepper sprayed one time in the patrol car. (Pl. Depo. at 35:22-36:1). After being sprayed, she started kicking the window again with greater force. (Id. at 25:15-17; Video at 10:01-10:40). The windows were rolled down in the car. (Riggall Depo. at 40:4-16). Ms. Sibley was informed by another officer to blink her eyes to help mitigate the effects of the pepper spray and that once she calmed down, they could take her out of the car and put water on her face to wash off the spray. (Riggall Depo. at 47:3-8; Video at 10:40-12:12). Ms. Sibley yelled over the officer attempting to speak with her. (Video at 11:14-13:30). The officers were able to take Ms. Sibley out of the car and wash her face off a little more than five minutes after she was sprayed. (Riggall Depo. at 47:9-18; Riggall Decl. at ¶¶ 5-6; Video at 13:19-16:27).

The video shows that Ms. Sibley was placed back into the car and that she had water on face and shirt. (Pl. Depo. at

33:1-18; Video at 15:56-16:27). Once Ms. Sibley arrived at
the sally port at the Lakeland Police Station, she was
escorted to a garden hose and provided more water to flush
her eyes. (Riggall Decl. at ¶ 9).

Officer Riggall moves for summary judgment (Doc. # 63),
and the Motion is fully briefed. (Doc. ## 70, 73).

## II.  __Legal Standard__

Summary judgment is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a). A factual dispute alone is not enough to
defeat a properly pled motion for summary judgment; only the
existence of a genuine issue of material fact will preclude
a grant of summary judgment. Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a
reasonable jury could return a verdict for the non-moving
party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742
(11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g
Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if
it may affect the outcome of the suit under the governing
law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.
1997). The moving party bears the initial burden of showing

the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his

conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Analysis**

Ms. Sibley's only remaining claim is that Officer Riggall used excessive force when he pepper sprayed her while she was handcuffed in the patrol car. The parties do not dispute that Officer Riggall was acting pursuant to his discretionary authority when the alleged constitutional violation occurred. See Hinson v. Bias, 927 F.3d 1103, 1116 (11th Cir. 2019) ("To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. The term 'discretionary authority' covers all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." (citations and internal quotation marks omitted)).

Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities unless their conduct violates a clearly established statutory or constitutional right. Brannon v. Finkelstein, 754 F.3d 1269, 1278 (11th Cir. 2014). "Assessing

a claim of qualified immunity involves a two-step process: once a defendant raises the defense, the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010). Courts are "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." Id. The Court addresses each step of the qualified immunity analysis in turn.

### A. Constitutional Violation

"The Fourth Amendment's right to be free from unreasonable searches and seizures includes the right to be free from excessive force during arrest." Nigro v. Carrasquillo, 663 F. App'x 894, 896 (11th Cir. 2016) (citing Graham v. Connor, 490 U.S. 386, 394–95 (1989)). Therefore, claims that an officer used excessive force to carry out an arrest "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham, 490 U.S. at 395.

The "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

This Court takes into account that "police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Id. at 397. The reasonableness determination requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (internal quotation marks and citation omitted). Courts consider several factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether the detainee is actively resisting arrest or attempting to evade arrest." Graham, 490 U.S. at 396. Courts in this Circuit have also considered "the need for force to be applied"; "the amount of force applied in light of the nature of the need"; and "the severity of the injury." Patel v. City of Madison, 959 F.3d 1330, 1339 (11th Cir. 2020).

"Chemical spray can be properly deployed under the Fourth Amendment when the subject uses or threatens force, physically resists, or attempts to flee." J W by & through Tammy Williams v. Birmingham Bd. of Educ., 904 F.3d 1248,

1266 (11th Cir. 2018). "It cannot, of course, be used indiscriminately or without cause." Id. "Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002). "Courts have consistently concluded that using pepper spray is reasonable, however, where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital." Id.

"Pepper spray is an especially noninvasive weapon and may be one very safe and effective method of handling a violent suspect who may cause further harm to himself or others." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1245 (11th Cir. 2003). Pepper spray "is generally of limited intrusiveness, and it is designed to disable a suspect without causing permanent physical injury." Vinyard, 311 F.3d at 1348 (citation and internal quotation marks omitted). "Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee." Id. The Eleventh Circuit opined in dicta in Vinyard that the use of pepper spray on an arrestee secured in a police car would be "clearly

not excessive" if the arrestee were "physically aggressive," including "kick[ing] at the back seat of the patrol car, kick[ing] a window, and beat[ing] her head against a window presenting a safety risk to herself." Id. at 1348 n.9.

In another case, the Eleventh Circuit found the dicta from Vinyard persuasive in holding that an officer's use of pepper spray on a handcuffed but resisting arrestee in the back of a patrol car was not excessive force. Nigro, 663 F. App'x at 897. That court wrote:

> Officer Carrasquillo's use of pepper spray did not constitute excessive force in violation of the Fourth Amendment. Officer Carrasquillo applied two short bursts of pepper spray in response to Ms. Nigro's violently kicking the patrol car door and resisting arrest. The use of minimal force associated with a couple of two-second bursts of pepper spray was reasonable force to prevent Ms. Nigro from further damaging government property, injuring herself, or harming the officers.

Id.

Although the Court agrees with the reasoning of Nigro and Vinyard, factual disputes preclude summary judgment here. Reasonable jurors could differ in their view of the video in the patrol car, which is open to interpretation. See Sayler v. Gilbert, No. 2:08-CV-516, 2010 WL 1276713, at *7 (S.D. Ohio Mar. 26, 2010) (denying summary judgment in excessive force case where "the contents of the video itself are open

to interpretation" such that a "reasonable jury could credit [plaintiff's] explanations that his movements seen in the video were the result of being extremely intoxicated, while the same jury could view the video as corroborating [the officer's] statements that [plaintiff] was actively resisting his control"). True, it is undisputed that Ms. Sibley, while in the backseat of the patrol car, kicked the door and window of the patrol car multiple times and continued to do so after being told to stop. But reasonable jurors could disagree over whether Ms. Sibley's conduct before being pepper sprayed was violent or presented a danger to herself, others, or government property.

This is because the amount of force Ms. Sibley was using is not clear in the video. While Ms. Sibley testified that she had "kicked" while in the patrol car, she did not testify that she had been violent or used much force. (Pl. Depo. at 16:11-17). Upon review of the video, a reasonable jury could determine that Ms. Sibley was using such minimal force with her "kicks" that these "kicks" were essentially non-violent "taps." A reasonable jury could disbelieve Officer Riggall's testimony that Ms. Sibley was "full-force kicking." (Riggall Depo. at 41:17-18). Furthermore, the video does not appear to show the patrol car shaking back and forth because of strong

13

kicks, as Officer Riggall testified occurred. (Id. at 38:19-
21) ("I could hear some sort of banging coming from in my
car, and I could see the car shaking back and forth."). Ms.
Sibley's kicks against the door before being pepper sprayed
appear less forceful than those made shortly after she was
pepper sprayed, possibly suggesting her original kicks were
quite light. Furthermore, there is no evidence that Ms.
Sibley's actions damaged the patrol car or herself, again
suggesting not much force was used.

Thus, based on the video footage, a reasonable jury could
conclude that Ms. Sibley was using very little force when she
kicked the door and window of the patrol car. That reasonable
jury could think that Ms. Sibley was non-violently "tapping"
the door with her feet to gain Officer Riggall's attention
because she could not use her handcuffed hands to tap. Indeed,
Ms. Sibley's expert on police practices, Mr. Jeronimo
Rodriguez, interpreted Ms. Sibley's conduct as tapping rather
than forceful kicking. (Rodriguez Report at 10-14; Rodriguez
Depo. at 39:1-20). Mr. Rodriguez "saw no indication that [Ms.
Sibley] was violent or assaultive as she tried to get the
officer's attention" and "saw no sign that [Ms. Sibley] was
trying to break the window to escape." (Rodriguez Report at
12). Based upon his years of experience as a law enforcement

officer and familiarity with police practices, Mr. Rodriguez opined that Ms. Sibley's "actions did not rise to the level that, according to [the Lakeland Police Department's] policy and generally accepted practices, would have permitted Officer Riggall to use [pepper spray] on [her], while she was handcuffed and secured in the back seat of the police car." (Id. at 13).

Looked at in this light, Ms. Sibley — although loud and upset — was not behaving violently or in a manner that put herself, others, or police property at risk while in the patrol car. She was not trying to escape and was securely detained in the patrol car with her hands handcuffed behind her back. Although officers had to pull a resisting Ms. Sibley into the patrol car, Ms. Sibley was not pepper sprayed until over a minute after she was safely secured in the patrol car with the doors closed. See Ferguson v. McDonough, 13 F.4th 574, 583 (7th Cir. 2021) ("[A]ctive resistance at some point prior to an officer's deployment of force does not necessarily make the use of such force reasonable under the circumstances if the suspect is passively resisting when force is deployed."). Officer Riggall testified that, when he saw Ms. Sibley kicking in the patrol car, he did not fear for his

safety and did not believe Ms. Sibley could escape. (Riggall Depo. at 39:17-19, 40:17-24).

Given all this, a reasonable jury could conclude that Officer Riggall used excessive force when he pepper sprayed Ms. Sibley. See Vinyard, 311 F.3d at 1347-48 (finding use of pepper spray was excessive where "Vinyard was not posing a threat to the safety of Officer Stanfield or others, much less an immediate threat" and "was under arrest and secured with handcuffs and in the back seat of the patrol car," even though "she was screaming and using foul language in the patrol car").

Ms. Sibley's interpretation of the evidence is distinguishable from the facts of Nigro and Vinyard's footnote. In Nigro, for example, it was clear that the plaintiff had "caused damage to the patrol car by kicking out the window casing of the doorframe," establishing that she had been violently kicking. Nigro, 663 F. App'x at 895. Likewise, in the footnote of Vinyard, the Eleventh Circuit opined that the use of pepper spray would not be excessive where the arrestee "kicked at the back seat of the patrol car, kicked a window, and beat her head against a window presenting a safety risk to herself," as well as "tried to kick" the officer. Vinyard, 311 F.3d at 1348 n.9. The

16

hypothetical in Vinyard's footnote was clear that the arrestee was violently resisting and presenting a danger to herself and others. Taking the evidence in the light most favorable to Ms. Sibley, her actions were not violent like the conduct from Nigro and Vinyard's footnote and presented no danger to herself, others, or government property.

No doubt a reasonable jury could also interpret Ms. Sibley's behavior as violent, forceful kicking, which aligns with Officer Riggall's version of events. (Riggall Depo. at 38:19-21; 41:17-18). Such a jury could also place great weight on the fact that Ms. Sibley resisted being placed in the patrol car shortly before being pepper sprayed and continued kicking after Officer Riggall ordered her to stop. Her kicking could be interpreted as violent noncompliance that put herself and police property at risk. Under that view, the Graham factors would weigh in favor of finding that Officer Riggall did not use excessive force. At summary judgment, however, the Court takes the facts in the light most favorable to Ms. Sibley – it cannot adopt the facts as Officer Riggall sees them.

In short, "because viewing the video in [Ms. Sibley's] favor could reasonably lead to a finding of excessive force, this case does not fall within the limited exception under

which the plaintiff's account may be disregarded because it is 'so utterly discredited by the record as to be rendered a visible fiction.'" Eggleston v. Short, 560 F. App'x 561, 564 (6th Cir. 2014) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). Therefore, a genuine dispute of material fact remains as to whether a constitutional violation occurred.

### B.    Clearly Established Law

The Court's analysis, however, does not stop at whether a constitutional violation occurred. Even if a constitutional violation occurred, Officer Riggall would nevertheless be entitled to qualified immunity if the law was not clearly established.

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Helm v. Rainbow City, 989 F.3d 1265, 1272 (11th Cir. 2021) (citation and quotation marks omitted). "An officer's unconstitutional use of force is therefore not actionable unless the officer was on notice that his or her actions were clearly unlawful." Id.

"A plaintiff has three ways to show that government officials were on notice regarding the constitutionality of their actions." Id. "*First*, the plaintiffs may show that a

18

materially similar case has already been decided. *Second*, the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation." Gaines v. Wardynski, 871 F.3d 1203, 1208 (11th Cir. 2017) (citation omitted). "*Finally*, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary. Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [relevant State Supreme Court]." Id. (citation omitted).

Again, it is clearly established that "using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." Vinyard, 311 F.3d at 1348; see also Brown v. City of Huntsville, 608 F.3d 724, 739 (11th Cir. 2010) ("[A]n objectively reasonable police officer would have known it was unlawful to use pepper spray and other force against an arrestee who was suspected only of a minor offense (playing music too loud), was not threatening the officer or the public, was not attempting to flee, and who had communicated her willingness to be arrested."). "Courts have consistently

concluded that using pepper spray is reasonable, however, where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital." Vinyard, 311 F.3d at 1348.

Importantly, in deciding whether the law was clearly established, the Court focuses on Ms. Sibley's version of events as described in the previous section. See Tolan v. Cotton, 572 U.S. 650, 657 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard. . . . [C]ourts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions."). Again, a reasonable jury could conclude that Ms. Sibley was non-violently tapping the patrol car's door and window area to get Officer Riggall's attention while in the patrol car. Additionally, the crimes for which Ms. Sibley was arrested, resisting an officer with violence and battery on a law enforcement officer, are relatively minor infractions considering Ms. Sibley's level of resistance that led to the arrest (pulling her arm away from Officer Riggall's grip during an investigatory stop).

Taking the facts in the light most favorable to Ms. Sibley, she was secured and handcuffed in the patrol car, was not a threat to herself, others, or government property, and was not behaving violently. Under that version of events, every reasonable officer would understand that pepper spraying Ms. Sibley was unlawful under clearly established law, particularly Vinyard. Ms. Sibley need not present a case in which a handcuffed and secured arrestee in the back of a patrol car "tapped" the door or window with her feet and the subsequent use of pepper spray was held to be excessive force. (Doc. # 73 at 6). Vinyard is sufficiently similar and clearly established that it is excessive force to pepper spray a secured, handcuffed arrestee who is not violent or a danger to herself or others. Therefore, Officer Riggall is not entitled to qualified immunity at this time.

The Court notes, however, that Officer Riggall may reassert his qualified immunity defense at trial. See Johnson v. Breeden, 280 F.3d 1308, 1318 (11th Cir. 2002) ("[A] defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense."); Ferguson, 13 F.4th at 584 ("At trial, a jury

21

may resolve disputed facts in Officer McDonough's favor, and the district court could then determine he is entitled to qualified immunity as a matter of law.").

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Nicholas S. Riggall's Motion for Summary Judgment (Doc. # 63) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of February, 2026.

_Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE